**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CORY SITES and CARRIE SITES, | : | |
| | : | |
| Plaintiffs | : | Civil Action No. 1:07-cv-00469 |
| | : | |
| v. | : | (Chief Judge Kane) |
| | : | |
| NATIONSTAR MORTGAGE LLC, | : | |
| | : | |
| Defendant | : | |

**MEMORANDUM**

The above-captioned action, in which Plaintiffs Corey and Carrie Sites claim monetary

damages in excess of $537,000 from Defendant Nationstar Mortgage LLC, has its origins in a

single mortgage loan payment of $814.36.  According to Plaintiffs, Defendant untimely credited

the payment to their account and falsely reported the loan as delinquent to major credit bureaus

with the sole purpose of frustrating the Sites' efforts to refinance the loan.  In their amended

complaint (Doc. No. 12), Plaintiffs assert claims for defamation, intentional interference with

prospective contractual relations, fraud, and a single, unspecified violation of Pennsylvania's

Unfair Trade Practices and Consumer Protection Law, 73 Pa. Cons. Stat. Ann. §§ 201-1 to -9.3

(West 2008).

Before the Court is Defendant's motion to dismiss Plaintiffs' amended complaint

pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Doc. No. 14.)  In the instant motion,

Defendant argues that all of plaintiffs' claims must be dismissed as entirely preempted by

the Fair Credit Reporting Act, 15 U.S.C. §§ 1681–1681x (2006).  (Id. at 1.)  For the reasons that

follow, the Court will grant Defendant's motion to dismiss with respect to Plaintiffs' claim under

Pennsylvania's Unfair Trade Practices and Consumer Protection Law and deny Defendant's

motion with respect to Plaintiffs' claims of defamation, intentional interference with prospective contractual relations, and fraud.

## I.    INTRODUCTION

### A.    Procedural History

Plaintiffs Cory and Carrie Sites filed their original complaint against Defendant Nationstar Mortgage LLC, formerly Centrex Home Equity Company LLC, on March 12, 2007, asserting claims of defamation, intentional interference with prospective contractual relations, fraud, and a single, unspecified violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 Pa. Cons. Stat. Ann. §§ 201-1 to -9.3.  (Doc. No. 1.)  On June 4, 2007, Defendant filed a motion to dismiss the complaint, in which it argued that the Fair Credit Reporting Act, 15 U.S.C. §§ 1681–1681x, preempted Plaintiffs' claims.  (Doc. No. 7)  Plaintiffs filed an amended complaint soon thereafter, rendering Defendant's then-pending motion moot.  (Doc. No. 12.)  On July 2, 2007, Defendant filed the instant motion to dismiss Plaintiffs' amended complaint (Doc. No. 14) and brief in support thereof (Doc. No. 15), renewing its preemption argument.  Plaintiff timely filed a brief in opposition to the motion (Doc. No. 16), after which Defendant timely filed a brief in reply (Doc. No. 17).

### B.    Jurisdiction

The Plaintiffs are citizens of the Commonwealth of Pennsylvania.  (Doc. No. 12, at 1.)  Defendant is a Texas corporation with its principal place of business in Dallas, Texas.  (Id.)  Plaintiffs claim monetary damages in excess of $537,000.  (Id. at 7, 12.)  Because the parties are citizens of different states and the amount in controversy exceeds $75,000, the Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 (2006).

### C.     Factual Background

Accepting as true all well-pleaded allegations of fact and any reasonable inferences that may be drawn therefrom, the factual background of the instant action is as follows.  See Kopec v. Tate, 361 F.3d 772, 775 (3d Cir. 2004) (explaining that a court must take a non-movant's allegations as true "when supported by proper proofs" on a motion for summary judgment).

Working with Defendant's branch manager Steve ("Branch Manager"), whose last name is unknown, Plaintiffs secured a mortgage loan from Defendant in September 2004. (Am. Compl. ¶¶ 4, 5.)  Plaintiffs' monthly payment on the loan at all times relevant to this action was $814.36.  (Id. ¶ 6.)  In November 2005, Plaintiffs tendered a check for $814.36 to Defendant in full satisfaction of their monthly loan payment.  (Id. ¶ 7.)  Defendant, however, erroneously credited Plaintiffs' account for $314.36, rather than the full amount.  (Id. ¶ 8.)  Upon learning of Defendant's mistake, Plaintiffs tendered an additional payment of $500 to Defendant by way of a wire transfer made November 22, 2005.  (Id. ¶¶ 9, 10.)  Subsequent monthly loan payments cleared Plaintiffs' bank account on December 15, 2005; January 3, 2006; February 9, 2006; and March 10, 2006.  (Id. ¶ 11.)

In early March 2006, Plaintiffs approached CoreStar Financial Group ("CoreStar"), a competing lender, about refinancing their mortgage loan.  (Id. ¶ 12.)  A few days later, CoreStar requested the "payoff" amount for Plaintiffs' loan from Defendant.  (Id. ¶ 13.)  Prior to fulfilling that request, however, Defendant reported Plaintiffs' February 2006 loan payment as past due to the three major credit bureaus, Equifax, Experian, and TransUnion.  (Id. ¶ 14.)  Almost immediately thereafter, the Branch Manager contacted Plaintiffs and proposed that they refinance their loan through Defendant rather than CoreStar.  (Id. ¶ 15.)  Several days of

discussions followed, but Plaintiffs ultimately reached the conclusion that Defendant could not better the terms offered by CoreStar.  (Id. ¶ 16.)

Defendant provided CoreStar with the requested payoff amount on March 13, 2006. (Id. ¶ 22.)  That same day, Defendant provided Plaintiffs with a good faith estimate and proposed loan agreement for a refinancing loan with a 30-year term and a fixed interest rate of 7.57%. (Id. ¶ 23.)  On March 15, 2006, CoreStar received an updated copy of Plaintiffs' credit report indicating that Plaintiffs' mortgage loan had been delinquent for thirty days.  (Id. ¶ 24.) CoreStar responded to the report by modifying the terms of the proposed refinancing loan (id. ¶ 25) "from a 30-year note with a fixed interest rate of 7.75% to a 30-year note with a variable interest rate of 8.55% for three years and up to a maximum interest rate of 14.55%" (id. ¶ 26).

At some point during the first few weeks of March—exactly when is not clear from the face of Plaintiffs' amended complaint—the Branch Manager contacted a debt collection agent ("Agent") at Paragon Way, a collection agency seeking repayment of a debt, unrelated to Plaintiffs' mortgage loan, owed by Plaintiff Carrie Sites.  (Id. ¶ 17.)  Impersonating Plaintiff Cory Sites, the Branch Manager attempted to settle the debt for less than fifty cents on the dollar with the promise that she would discharge any outstanding obligations by means of a cash payout from the proposed refinancing loan.  (Id. ¶ 18.)  All of this was done without Plaintiffs' knowledge or consent (id. ¶ 19), and the Agent has since identified the Branch Manager's voice in a message left on Plaintiffs' answering machine as that of the individual who had negotiated the settlement of Plaintiff Carrie Sites's debt (id. ¶ 21).

4

Plaintiffs closed on the refinancing loan with CoreStar under the modified terms on March 26, 2006.  (Id. ¶ 28.)  Two days later, a representative of Defendant's Customer Relations Office wrote Plaintiffs to inform them that it had "adjusted Plaintiffs['] account and reported the correct information to the three major credit bureaus."  (Id. ¶ 29.)

## II.   STANDARD OF REVIEW

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) is properly granted when, accepting all factual allegations and inferences as true, the moving party is entitled to judgment as a matter of law.  Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir. 1990).  Although the moving party bears the burden of showing that no claim has been stated, Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2007), the complaint must allege facts sufficient to "raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)," Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007) (citations omitted).  Moreover, in order to satisfy federal pleading requirements, a plaintiff's obligation "to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (brackets and quotation marks omitted) (quoting Twombly, 127 S. Ct. at 1964–65).

## III.   DISCUSSION

In its motion to dismiss, Defendant argues that the Fair Credit Reporting Act ("FCRA") preempts Plaintiffs' claims of defamation and intentional interference with prospective contractual relations and, to the extent that Plaintiffs predicate their claim of fraud upon an allegation that Defendant furnished the credit bureaus with inaccurate information, Plaintiffs'

claim of fraud as well.  (Doc. No. 14, at 5.)  Defendant vigorously objects to Plaintiffs'

"outlandish" allegation—new to the amended complaint—that its Branch Manager assumed the

guise of Plaintiff Cory Sites in order to negotiate "a 50% reduction of the debt owed."

(Id. at 21.)  Defendant argues that, "even accepting the new allegation as true . . . , the Court

must dismiss the claims that rely on this allegation because Plaintiffs have not, and cannot,

allege actual damages."  (Id. at 21.)  As to why "Plaintiffs have not, and cannot, allege actual

damages," Defendant contends that, "[s]ince Plaintiffs admit that they paid only the full amount

for which they were legally obligated to Paragon Way and not one cent more, their allegations,

even if accepted as true, fail to allege any actual damages."  (Doc. No. 17, at 13.)

        The purpose of the FCRA is to "insure that consumer reporting agencies exercise their

grave responsibilities with fairness, impartiality, and a respect for the consumer's right to

privacy."  15 U.S.C. § 1681(a)(4) (2006).  To that end, the FCRA imposes numerous duties upon

"furnishers of information," that is, financial institutions and persons who supply

consumer-related information to credit reporting agencies.  These duties are laid out in

subsections (a) and (b) of § 1681s-2.  Subsection (a) establishes an overarching duty "to provide

accurate information," id. § 1681s-2(a), which includes a prohibition on reporting information

with actual knowledge of errors, id. § 1681s-2(a)(1)(a); a duty to correct and update information,

id. § 1681s-2(a)(2); a duty to provide notice of a dispute, id. § 1681s-2(a)(3); a duty to provide

notice of voluntarily closed accounts, id. § 1681s-2(a)(4); a duty to provide consumers with

notice of the furnishing of negative information, id. § 1681s-2(a)(7)(A); and a conditional duty to

reinvestigate a dispute concerning the accuracy of information contained in a consumer report

based on a consumer's direct request, id. § 1681s-2(a)(8)(A).  Subsection (b) sets forth the duties

of furnishers "after receiving notice . . . of a dispute with regard to the completeness or accuracy of any information," including the duty to conduct an investigation and report its results to the consumer reporting agency.  Id. § 1681s-2(b)(A), (C).

Notwithstanding the depth and breadth of these duties, the FCRA limits the enforcement of § 1681s-2(a) to government agencies and officials, id. § 1681s-2(d), and, relatedly, curtails private rights of action for violations of the act, id. § 1681h(e), 1681t.  See Gordon v. Greenpoint Credit, 266 F. Supp. 2d 1007, 1011 (S.D. Iowa 2003) ("To prevent the glut of cases in the federal courts that would result if every consumer could sue anytime he or she disputed the accuracy of furnished information, Congress wisely limited enforcement of this section to government agencies.").  Two provisions in particular serve to shield furnishers of information from the threat of private suits: § 1681h(e), which provides qualified immunity from "proceeding[s] in the nature of defamation, invasion of privacy, or negligence," id. § 1681h(e), and § 1681t(b), which provides qualified immunity from proceedings "under the laws of any State," id. § 1681t(b).  Section 1681h(e), quoted in its entirety, provides that:

> Except as provided in sections 1681n and 1681o of this title, [which provide private causes of action for willful noncompliance and negligent noncompliance, respectively,] no consumer may bring any action or proceeding in the nature of *defamation, invasion of privacy, or negligence* with respect to the reporting of information against *any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency*, based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer *against whom the user has taken adverse action*, based in whole or in part on the report *except as to false information furnished with malice or willful intent to injure such consumer.*

Id. § 1681h(e) (emphasis added).  The product of an omnibus appropriations bill enacted in

1996, § 1681t(b) provides in relevant part that:

> No requirement or prohibition may be imposed *under the laws of any State*—
>
> (1) with respect to any subject matter regulated under . . .
>
>> (F) section 1681s-2 of this title, relating to the responsibilities of *persons who furnish information to consumer reporting agencies*, except that this paragraph shall not apply—
>>
>>> (i) with respect to section 54A(a) of chapter 93 of the Massachusetts Annotated Laws (as in effect on September 30, 1996);  or
>>>
>>> (ii) with respect to section 1785.25(a) of the California Civil Code (as in effect on September 30, 1996);

Id. § 1681t(b)(1)(F) (emphasis added).  Suffice to say at this point that district courts have long

struggled, in the absence of guidance from a higher authority, to reconcile the conflict between

the common law concerns of § 1681h(e) and the sweeping ambit of § 1681t(b) as it applies to

"the laws of any State."  See Weseman v. Wells Fargo Home Mortg., Inc., No. 06-1338, 2008

WL 542961, at *3 (D. Or. Feb. 22, 2008) ("To date,[not one] circuit court has addressed the

scope of preemption under the FCRA.").  See also Beyer v. Firstar Bank, 447 F.3d 1106 (8th Cir.

2006) (declining to "address this complex question"); Richard J. Rubin, Fair Credit Reporting

Act Amendments Provide New Duties on Furnishers of Information, 1113 PLI/Corp 203, 207–8

(1999) ("[T]he amendments add a new section that promises to confuse all concerned until

authoritatively interpreted by the courts.").

　　　According to Defendant, § 1681t(b) "preempts *all* state law claims against a furnisher

based upon the furnisher's reporting of information to a consumer reporting agency,"

8

irrespective of the effects of § 1681h(e).  Because Plaintiffs' claims of defamation, intentional

interference with prospective contractual relations, and fraud are predicated in whole or part

upon an allegation that, Defendant contend, "falls squarely within §1681s-2(a), which establishes

the duties and obligations of a furnisher to report accurate information to consumer reporting

agencies[,] . . . [the aforementioned] claims are preempted by §1681t and must be dismissed."

(Doc. No. 14, at 8–9; see also id. at 5–9.)  Plaintiffs, by contrast, assert that § 1681t "does not

apply to tort causes of action and when analyzed under the principles of statutory construction

yields to § 1681h(e)."  (Doc. No. 16, at 1; see also id. at 4–12.)  Furthermore, Plaintiffs assert,

"since [they] have averred that the information was furnished by Defendant with malice" and

§ 1681h(e) offers no immunity to those who furnish false information with malice, all of their

claims "should be allowed to proceed without limitation."  (Id. at 14.)

### A.     Whether § 1681h(e) Preempts Plaintiffs' Claims

As numerous courts have observed, § 1681h(e) serves as a quid pro quo grant of

protection for statutorily required disclosures.  See, e.g., Thornton v. Equifax, Inc., 619 F.2d 700,

703 (8th Cir. 1980); Islam v. Option One Mortg. Corp., 432 F. Supp.2d 181, 193 (D. Mass.

2006) (citing cases).  "Since various parts of the federal statute require consumer reporting

agencies and information users to disclose information to consumers under certain

circumstances, this section guarantees that the agencies or users cannot be sued for those

required disclosures under state tort law."  McAnly v. Middleton & Reutlinger, P.S.C.,

77 F. Supp. 2d 810, 814 (W.D. Ky. 1999).  While not dispositive of legislative intent, the

section's heading, "Limitation of liability," lends further support to this interpretation.  See Gay

v. CreditInform, 511 F.3d 369, 385 (3d Cir. 2007) (noting that "the title of a statute and the

heading of a section are tools available for the resolution of a doubt about the meaning of a statute") (citing <u>Almendarez-Torres v. United States</u>, 523 U.S. 224, 234 (1998)).

In the instant case, Plaintiffs do not allege—nor could they—that Defendant disclosed information pursuant to § 1681g or § 1681h, both of which speak exclusively to consumer reporting agencies, not "user[s] of information" or "person[s] who furnish[] information to a consumer reporting agency."  <u>See</u> 15 U.S.C. §§ 1681g, 1681h (2006).  Likewise, § 1681m and the balance of § 1681h(e) concerning "information disclosed by a user of a consumer report to or for a consumer," <u>id.</u> § 1681h(e),  presuppose that the target of the action took an "adverse action with respect to [the] consumer," <u>id.</u> § 1681m(a), which Defendant most certainly did not. Though Defendant is alleged to have furnished false information to consumer reporting agencies, CoreStar alone is alleged to have taken an "adverse action," to wit, "a denial or revocation of credit . . . or a refusal to grant credit in substantially the amount or on substantially the terms requested," with respect to the Plaintiffs.  <u>Id.</u> § 1681a(k)(1)(A) (defining adverse action for credit transactions).  Because Defendant is neither a credit reporting agency nor a user of a consumer report that denied, revoked, or refused credit with respect to the Plaintiffs, § 1681h has no application to the instant case.  <u>See, e.g.</u>, <u>Islam</u>, 432 F. Supp.2d at 194 (finding 15 U.S.C. § 1681h(e) "simply . . . not applicable" where the defendant mortgage servicer, "the alleged furnisher of the incorrect information," was neither "a credit reporting agency[, nor] sued in its capacity as a user of credit reports[, nor] alleged to have taken any adverse action against the [plaintiffs] based on information in the [plaintiffs'] credit report"); <u>Webb v. Bob Smith Chevrolet, Inc.</u>, No. 04-CV-66, 2005 WL 2065237, at *5 (W.D. Ky. Aug. 24, 2005) (finding

15 U.S.C. § 1681h(e) inapplicable where the defendant was "a user of consumer information," but there was "no allegation that [the defendant] took an adverse action against Plaintiff").

### B.        Whether § 1681t(b)(1)(F) Preempts Plaintiffs' Claims

Inapplicability aside, § 1681h(e), "by prohibiting certain state-law claims, impliedly allows others." Islam, 432 F. Supp. 2d at 190.  Thus, there is "a potential conflict between § 1681h(e) and § 1681t(b), which purports to preempt all state law claims related to the reporting of consumer credit information," other than those brought under certain California and Massachusetts statutes.  Leet v. Cellco P'ship, 480 F. Supp. 2d 422, 430 (D. Mass. 2007). Neither provision is a model of clarity, however, and their reconciliation "has vexed district courts nationwide since Section 1681t(b) was added to the code in 1996." Islam, 432 F. Supp. 2d at 190.

From the growing body of caselaw considering the interplay of these two provisions, three predominant approaches emerge: the "total preemption" approach, the "temporal" approach, and the "statutory" approach.  As one of our sister courts in the Eastern District of Pennsylvania succinctly stated:

> Under the "total preemption" approach, t(b)(1)(F) does indeed preempt all state law claims against furnishers of credit information arising from conduct regulated by 1681 s-2, thus effectively repealing the earlier preemption provision, 1681h(e).  Under the "temporal" approach, preemption depends on whether the cause of action arises before or after a credit information furnisher has notice of a consumer dispute.  Finally, under the "statutory" approach, t(b)(1)(F) preempts only state law claims against credit information furnishers brought under state statutes, just as 1681h(e) preempts only state tort claims.

Manno v. Am. Gen. Fin. Co., 439 F. Supp. 2d 418, 424 (E.D. Pa. 2006) (footnotes omitted) (citing cases).

Because it "runs afoul of several rules of statutory construction," the total preemption approach is generally disfavored among district courts.[1]  Islam, 432 F. Supp. 2d at 190.  In Islam, the district court provided an exhaustive and frequently cited inventory of the method's shortcomings:

> Most importantly, the Supreme Court has stated that "repeals by implication are not favored."  "There are two well-settled categories of repeals by implication:  (1) Where provisions in the two acts are in irreconcilable conflict . . . ; and (2) if the later act covers the whole subject of the earlier one and is clearly intended as a substitute . . . ."  The second category is clearly inapplicable here, and . . . Sections 1681t(b) and 1681h(e) are not in irreconcilable conflict. . . .
>
> Moreover, courts have widely acknowledged that Section 1681h(e) is a more specific preemption provision than is Section 1681t(b).  Statutory canons of construction instruct that a more specific provision normally will control a more general one.  It is Section 1681t(b), therefore, that should yield in the face of a conflict with Section 1681h(e), rather than the other way around.
>
> Finally, and perhaps most convincing, the fact that Congress amended Section 1681h(e) in the same Act that it added Section 1681t(b) belies any argument that the latter was meant to repeal the former completely.  Indeed the 1996 amendment to Section 1681h(e) specifically *inserted* into its preemption exception anyone "who furnishes information"—the same group of individuals who are protected from state law by Section 1681t(b) . . . .

Id. at 190–91 (citations omitted).  With only a few exceptions, what district courts have understandably concluded is that the "total preemption approach cannot be correct."  Id. at 191;

---

[1] See, e.g., Howard v. Blue Ridge Bank, 371 F. Supp. 2d 1139, 1143–44 (N.D. Cal. 2005); Roybal v. Equifax, No. 05-1207, 2005 WL 3536115, at *3–4 (E.D. Cal. Oct. 19, 2005); Campbell v. Chase Manhattan Bank, USA, N.A., No. 02-3489, 2005 WL 1514221, at *16–17 (D.N.J. June 27, 2005), amended by 2005 WL 1924669 (D.N.J. Aug. 10, 2005); Purcell v. Universal Bank, N.A., 2003 WL 1962376, at *5 (E.D. Pa. Apr. 28, 2003); Davis v. Maryland Bank, NA, 2002 WL 32713429 (N.D. Cal. June 19, 2002); Carney v. Experian Info. Solutions, Inc., 57 F. Supp. 2d 496, 503 (W.D. Tenn. 1999).

see, e.g., Manno, 439 F. Supp. 2d at 427; Barnhill, 378 F. Supp. 2d at 700–01 (finding that the total preemption approach "fatally flawed" because it "unnecessarily renders § 1681h(e) a nullity and fails to account for the FCRA's legislative history"); Johnson v. Citimortgage, Inc., 351 F. Supp. 2d 1368 (N.D. Ga. 2004); Stafford v. Cross Country Bank, 262 F. Supp. 2d 776, 786 (W.D. Ky. 2003); but see Howard v. Blue Ridge Bank, 371 F. Supp. 2d 1139, 1143–44 (N.D. Cal. 2005) (adopting total preemption approach).

After a brief flourishing, support for the temporal approach is most decidedly on the wane, particularly in the wake of the Eastern District of Pennsylvania's well-reasoned opinion in Manno.[2]  See, e.g., Aklagi v. Nationscredit Fin. Servs. Corp., 196 F. Supp. 2d 1186, 1193–96 (D. Kan. 2002) (advocating temporal approach); but see Miller v. Wells Fargo & Co., No. 05-CV-42, 2008 WL 793676, at *10 (W.D. Ky. Mar. 24, 2008) ("Although [it] has utilized the temporal approach in the past, . . . [t]his court finds the reasoning set forth in Manno to be persuasive and will adopt the statutory approach . . . .").  The temporal approach posits that each of the preemption provisions pertains to its own discrete time period.  Because a furnisher's duties under § 1681s-2(b) are "triggered only after the furnisher receives notice of the dispute *from a consumer reporting agency*, not just the consumer," id. at 1193, state law claims based

_____

[2] See, e.g., Lofton-Taylor v. Verizon Wireless, No. 05-0532, 2006 WL 3333759, at *7–8 (S.D. Ala. Nov. 14, 2006); Ryder v. Washington Mut. Bank, FA, 371 F. Supp. 2d 152, 154–55 (D. Conn. 2005); Kane v. Guaranty Residential Lending, Inc., No. 04-4847, 2005 WL 1153623, at *5–9 (E.D.N.Y. May 16, 2005); Cox v. Beneficial Kansas, Inc., No. 04-4128, 2005 WL 627974, at *3 (D. Kan. Mar. 9, 2005); Woltersdorf v. Pentagon Federal Credit Union, 320 F. Supp. 2d 1222, 1223–27 (N.D. Ala. 2004); Stafford v. Cross Country Bank, 262 F. Supp. 2d 776, 783–88 (W.D. Ky. 2003); Bank One, N.A. v. Colley, 294 F. Supp. 2d 864, 868–69 (M.D. La. 2003); Riley v. General Motors Acceptance Corp., 226 F. Supp. 2d 1316, 1322–25 (S.D. Ala. 2002); Vazquez-Garcia v. Trans Union De Puerto Rico, 222 F. Supp. 2d 150, 159–63 (D.P.R.2002); Aklagi v. NationsCredit Fin. Serv. Corp., 196 F. Supp. 2d 1186, 1194–96 (D. Kan. 2002).

prior to the moment of this trigger do not fall under the 'subject matter' of § 1681s-2 and, thus, are not preempted.  However, "[a]s the court in <u>Aklagi</u> conceded, § 1681s-2 (a)(1)(A) charges furnishers of information with a duty to report accurate information regardless of whether the furnisher has notice of the dispute," making the temporal approach "strained at best."  <u>Gordon v. Greenpoint Credit</u>, 266 F. Supp. 2d 1007, 1013 (S.D. Iowa 2003) (citing <u>Aklagi</u>, 196 F. Supp. 2d at 1195).  Finally, as more than one court has noted, "the temporal approach creates the perverse effect of providing willful and malicious infringers with more protection (absolute immunity) from lawsuits after notice that the information they provided was incorrect than they had before such notice."  <u>Islam</u>, 432 F. Supp. at 192 (citing <u>Barnhill v. Bank of Am., N.A.</u>, 378 F. Supp. 2d 696, 702–03 (D.S.C. 2005)).

Contrary to Defendant's claims, a definite majority of district courts within and without the Third Circuit have expressed an unreserved preference for the statutory approach—and for good reason.[3]  <u>See, e.g.</u>, <u>Barnhill</u>, 378 F. Supp. 2d at 703–04 ("There are numerous reasons why the statutory approach is the most compelling of the three.")  The statutory approach, whereby

---

[3] <u>See, e.g.</u>, <u>Miller v. Wells Fargo & Co.</u>, No. 05-CV-42, 2008 WL 793676, at *7–10 (W.D. Ky. Mar. 24, 2008); <u>Weseman v. Wells Fargo Home Mortg., Inc.</u>, No. 06-1338, 2008 WL 542961, at *2–4 (D. Or. Feb. 22, 2008); <u>Manno v. Am. Gen. Fin. Co.</u>, 439 F. Supp. 2d 418, 423–29 (E.D. Pa. 2006); <u>Jordan v. Trans Union LLC</u>, 377 F. Supp. 2d 1307, 1309 (N.D. Ga. 2005); <u>Gorman v. Wolpoff & Abramson, LLP</u>, 370 F. Supp. 2d 1005, at 1009–10 (N.D. Cal. 2005); <u>Barnhill v. Bank of Am., N.A.</u>, 378 F. Supp. 2d 696, 703–04 (D.S.C. 2005); <u>Alabran v. Capital One</u>, No. 04-935, 2005 WL 3338663, at *5 (E.D. Va. Dec. 8, 2005); <u>DiPrinzio v. MBNA Am. Bank, N.A.</u>, No. 04-872, 2005 WL 2039175, *5–7 (E.D. Pa. Aug. 24, 2005); <u>Watson v. Trans Union Credit Bureau</u>, No. 04-205, 2005 WL 995687, at *6–8 (D. Me. Apr. 28, 2005); <u>Carlson v. Trans Union, LLC</u>, 259 F. Supp. 2d 517, 520–22 (N.D. Tex. 2003); <u>Johnson v. Citimortgage, Inc.</u>, 351 F. Supp. 2d 1368, 1376 (N.D. Ga. 2004); <u>Jeffery v. Trans Union</u>, 273 F. Supp. 2d 725, 727–28 (E.D. Va. 2003); <u>Gordon v. Greenpoint Credit</u>, 266 F. Supp. 2d 1007 at 1012–13 (S.D. Iowa 2003); <u>Dornhecker v. Ameritech Corp.</u>, 99 F. Supp. 2d 918, 930–31 (N.D. Ill. 2000).

§ 1681t(b) preempts only state statutory causes of action while § 1681h(e) preempts only the state common-law causes of action enumerated therein, "neatly comports with the statutory language," Islam, 432 F. Supp. 2d at 192, and, unlike the total preemption approach, does not offend the canons of statutory construction, Barnhill, 378 F. Supp. 2d at 703.  Moreover, the statutory approach has the distinct advantage of complying with the canon of statutory construction that requires a more general provision, namely, § 1681t(b), which concerns any and all state statutory laws, to yield in the presence of a more specific provision, namely, § 1681h(e), which concerns three precisely enumerated common-law causes of action.  See id.; 15 U.S.C. §§ 1681h(e), 1681t(b) (2006).  "By the same token, interpreting t(b)(1)(F) to preempt only statutory claims makes this newer preemption provision harmonize with 1681h(e)." Manno, 439 F. Supp. 2d at 426 (citing Pennsylvania v. Dep't of Health and Human Servs., 723 F.2d 1114, 1119 (3d Cir. 1983) ("[S]tatutory provisions enacted at different times should be read as harmoniously as possible, so that each is given effect and the provisions do not conflict.")).

Furthermore, the plain language of § 1681t(b) supports the statutory approach.  As the district court in Carlson v. Trans Union, LLC, 259 F. Supp. 2d 517 (N.D. Tex. 2003), persuasively explained:

> Section 1681h(e) clearly applies to torts.  The section specifically references "any action or proceeding in the nature of defamation, invasion or privacy, or negligence."  All claims in the (non-exclusive) list are torts.  Section 1681t(b)(1)(F) gives every indication of dealing only with state statutory regulation.  This is made yet more clear when you consider [that two state statutory laws] are specifically excluded from § 1681t(b)(1)(F)'s coverage.

Id. at 521 (emphasis omitted).  "In addition to the exemptions . . . for certain Massachusetts and

California statutes, 1681t contains no less than ten additional exceptions to preemption for

specific state statutes."  Manno, 439 F. Supp. 2d at 425 ("Congress's explicit exclusion of a

Massachusetts and a California statutory cause of action from preemption by t(b)(1)(F) is a

strong indication that Congress intended t(b)(1)(F) to preempt statutory claims.").  At bottom,

there is "no indication that Section 1681t(b)(1)(F) was meant to completely preempt all state law

claims including state common law claims."  Carlson, 259 F. Supp. 2d at 517.

Lastly, the statutory approach is a logical and legally sensible response to the quandary

posed by conceiving of common-law causes of action as being "in effect" on a date certain, as if

they were legislative enactments.  To quote our sister court in Manno once more:

> [T]wo subparagraphs of 1681t—t(b)(1)(B) and t(b)(1)(E)—provide
> that they "shall not apply to any State law in effect on September 30,
> 1996," the effective date of the 1996 amendments to the
> FCRA. . . . Because it makes no sense to speak of tort causes of
> action, derived from English common law, as coming into "effect"
> after a specific date in 1996, any such subsequent state enactments
> would have to be statutory in nature. . . .  If Congress intended 1681t
> to preempt state common law tort actions, it knew well how to
> express this intent in the statutory language.

Manno, 439 F. Supp. 2d at 425–26.  As another district court lately observed: "As § 1681t now

stands it may make common sense to read this exemption provision as applying to state statutory

regulations that overlap with the FCRA rather than with state common law torts which have

elusive 'effective' dates."  Watson v. Trans Union Credit Bureau, No. 04-205, 2005 WL 995687,

at *8 n.8 (D. Me. April 28, 2005).  Moreover, this interpretation sensibly "allow[s] for state-law

torts to serve as a backstop to the FCRA enforcement scheme, only permitting prosecution of the

most egregious violations of civil society."  Islam, 432 F. Supp. 2d at 193.

16

### C.    Jaramillo

The cornerstone of Defendant's total preemption argument is the Eastern District of

Pennsylvania's decision in Jaramillo v. Experian Information Solutions, Inc. (*Jaramillo I*),

155 F. Supp. 2d 356 (E.D. Pa. 2001), recons. granted in part, No. 00-CV-5876,

2001 WL 1762626 (June 20, 2001).  (See Doc. No. 15, at 7; Doc. No. 17, at 11–13.)  In

*Jaramillo I*, plaintiff brought suit against, among others, a savings bank, alleging violations of

the CPL and defamation.  Id. at 357–58.  Moving for dismissal, the bank argued that § 1681t(b)

preempted plaintiff's CPL claim.  Id. at 361.  The court unreservedly agreed, dismissing not only

plaintiff's CPL claim but, sua sponte, his defamation claim as well.  As the court explained, "the

plain language of [§ 1681t(b)] clearly eliminated *all state causes of action* against furnishers of

information, *not just ones that stem from statutes . . . .*"  Id. at 362 (emphasis added).  "Any other

interpretation," the court concluded, "would fly in the face of the plain meaning of the statute."

Id. at 361.  Such certitude notwithstanding, Plaintiff moved for reconsideration and, in a

one-sentence order issued the following month, the court reinstated the defamation claim without

explanation.  See Jaramillo (*Jaramillo II*), 2001 WL 1762626, at *1.

Since its publication, dozens of courts have cited *Jaramillo I* for the proposition that

§ 1681t(b) preempts both state common law and statutory claims.  See, e.g., Howard v. Blue

Ridge Bank, 371 F. Supp. 2d 1139, 1144 (N.D. Cal. 2005); Roybal v. Equifax, No. 05-1207,

2005 WL 3536115, at *4 (E.D. Cal. Oct. 19, 2005); Purcell v. Universal Bank, N.A., 2003 WL

1962376, at *5 (E.D. Pa. Apr. 28, 2003).  Surprisingly few of those courts have acknowledged

*Jaramillo II*, and, of those that have, fewer still have given the ruling any weight.  See Barnhill

v. Bank of Am., N.A., 378 F. Supp. 2d 696, 699 & n.1 (D.S.C. 2005) ("[T]he Jaramillo line of

decisions interprets § 1681t of the FCRA to preempt state law causes of action of negligence and libel . . . However, because the court left its dismissal of the statutory claim intact, the analysis in Jaramillo is useful."); Riley v. Gen. Motors Acceptance Corp., 226 F. Supp. 2d 1316, 1323 (S.D. Ala. 2002) ("The undersigned finds that the Jaramillo court's decision to reverse itself without explanation does not render the logic of the original opinion any less persuasive."). But see DiPrinzio v. MBNA Am. Bank, N.A., No. 04-872, 2005 WL 2039175, at *7 n.9 (E.D. Pa. Aug. 24, 2005) ("[B]y way of that reversal, the Jaramillo court distinguished between state statutory laws covered by the FCRA and state tort claims."). Nevertheless, a review of Jaramillo's motion for reconsideration plainly reveals that *Jaramillo II* represents the complete abandonment of the Eastern District's earlier position in favor of the statutory approach to preemption. See Jaramillo, No. 00-CV-5876, Doc. No. 24, Pl.'s Mot. for Recons. (E.D. Pa. June 7, 2001).

Remarking that the original order, as "the first reported ruling of its kind, . . . presents a compelling issue for reconsideration," id. at 3, Jaramillo argued that the court committed manifest error by reading § 1681h(e) and § 1681t(b) "in a way that . . . render[ed] one of the sections duplicative or superfluous," id. at 8. Jaramillo also argued—quite convincingly, in fact—that total preemption had the highly undesirable effect of making the FCRA the sole means of redress for a private party injured by a furnisher of information. Id. at 10. Given the particularity and purpose of these arguments, *Jaramillo II* can only be read as a summary reversal and, effectively, the Eastern District's inexplicit, though unambiguous, approval of the statutory approach. The Court therefore finds *Jaramillo I* and its total-preemption progeny wholly unpersuasive.

**D.     Applicability of § 1681h(e)**

Defendant further argues that "the decisions that have found (and attempted to reconcile)

a perceived conflict between §1681t and §1681h(e) under similar facts as those here [have]

incorrectly assume[d] that §1681h(e) is implicated in any case where a party asserts a state law

claim that arises from any activity covered by FCRA" (Doc. No. 15, at 11) and, "[t]herefore,

since §1681h(e) is inapplicable, all of Plaintiffs' claims that are based on information allegedly

reported by [Defendant] to the consumer reporting agencies are preempted by §1681t," (id.

at 18).  Plaintiffs counter that Defendant "ignores the plain reading of the statute in which a

furnisher of information is included in the categories of persons who may be liable under various

tort theories."  (Doc. No. 16, at 11.)  "Such an approach," Plaintiffs argue, "violate[s] the canons

of statutory construction, to which Defendant claims adherence, that no language in a statute

should be rendered superfluous or surplusage."  (Id.)  While both arguments miss the mark, the

Court finds that the plain language of 1681h(e) applies to furnishers of information such as

Defendant.

According to Defendant, "§ 1681h(e) is implicated only where the state law claim at

issue is: (1) one in the nature of defamation, invasion of privacy or negligence and (2) 'based on

information disclosed pursuant to §1681g, 1681h, or 1681m, or based on information disclosed

by a user of a consumer report to or for a consumer against whom the user has taken adverse

action . . . .'"  (Doc. No. 15, at 11 (citing 15 U.S.C. § 1681h(e) (2006)) (omission in original).)

This statement, however, conveniently elides two important provisions.

First, as Plaintiff points out, § 1681h(e) applies to any action or proceeding brought "with

respect to the reporting of information against any consumer reporting agency, any user of

information, or *any person who furnishes information to a consumer reporting agency*."

15 U.S.C. § § 1681h(e) (emphasis added).  Thus, § 1681h(e) targets a broad range information

users and furnishers, from credit bureaus to mortgage lenders such as Defendant.  At the risk of

stating the obvious, the instant action satisfies both of the foregoing conditions in that it is being

brought "with respect to the reporting of information" and against a "person who furnishe[d]

information to a consumer reporting agency."  Furthermore, the very root of the statutory

conflict in this case is the inclusion of "any person who furnishes information to a consumer

reporting agency" among the potential tortfeasors:  to wit, § 1681h(e) permits one class of state

law claims against "any person who furnishes information to a consumer reporting agency"

while § 1681t(b) prohibits all state law claims against "persons who furnish information to

consumer reporting agencies."  See Manno v. Am. Gen. Fin. Co., 439 F. Supp. 2d 418, 424

(E.D. Pa. 2006) ("[I]f [§ 1681t(b)] is construed to preempt all state law causes of action against

credit information furnishers, it renders [§ 1681h(e)] superfluous and effectively works an

implied repeal of that provision."); Richard J. Rubin, Fair Credit Reporting Act Amendments

Provide New Duties on Furnishers of Information, 1113 PLI/Corp 203, 208 (1999) ("If Congress

truly intended to pre-empt all such state law claims against furnishers, then it should have

deleted from [§ 1681h(e)] its coverage of 'any person who furnishes information to a consumer

reporting agency' when it adopted [§ 1681t(b)].").

Second, and most importantly, § 1681h(e) provides an exception for "false information

furnished with malice or willful intent to injure such consumer."  15 U.S.C. § 1681h(e).  See

Cushman v. Trans Union, 115 F.3d 220, 229 (3d Cir.1997); Rubin, supra, at 207 ("Specifically,

the Act pre-empts all state law actions 'in the nature of defamation, invasion of privacy, or

negligence . . . except as to false information furnished with malice or willful intent . . . .'"

(omissions in original)).  Plaintiffs do not allege that Defendant furnished information pursuant

to § 1681g or § 1681h, both of which concern credit bureaus, id. §§ 1681g, 1681h, or pursuant to

§ 1681m, the focus of which is "users taking adverse actions on basis of information contained in

consumer reports," id. § 1681m.  Rather, Plaintiffs allege that Defendant furnished false

information with malice and willful intent to injure.  (Am. Compl. ¶¶ 37, 47–49, 60, 64, 68.)

Thus, while § 1681h(e) is indeed "implicated"—to use Defendant's term—it does not operate to

preempt Plaintiff's state common law claims.  See, e.g., Manno v. Am. Gen. Fin. Co.,

439 F. Supp. 2d 418, 430 (E.D. Pa. 2006) (finding that § 1681h(e) did not preempt Plaintiffs'

defamation claim where a jury "could reasonably conclude that this intentional reporting of false

information was done 'knowingly and intentionally . . . in conscious disregard for the rights of

others.'" (citing Cushman, 115 F.3d at 226)); Rubin, supra, at 207 (explaining that, while

§ 1681h(e) preempts "claims based on mere negligent conduct[,] . . . this preemption does not

extend to state claims founded on reporting information which was known to be false or which

was reported in reckless disregard of its truth.").   Finally, even the court in Islam, a case

Defendant quotes at length for the claim that any perceived conflict between § 1681h(e) and

§ 1681t(b) is purely illusory, despite "numerous federal court decisions" to the contrary, takes

little stock in its holding, ruminating in conclusion, "Perhaps this be error.  If so, might some

circuit court shed light on the issue after all these years?"  Islam, 432 F. Supp. 2d at 194

(remarking that, "[w]ere this Court forced to reconcile Sections 1681t(b) and 1681h(e), th[e]

'statutory' approach to preemption would be the preferred method").

For the foregoing reasons, the Court adopts the statutory approach to reconciling § 1681t(b)(1)(F) and §1681h(e) whereby the former section preempts only state statutory claims, while the latter section preempts only the state common-law claims enumerated therein.  The Court will therefore grant Defendant's motion to dismiss with respect to Plaintiffs' claim under Pennsylvania's Unfair Trade Practices and Consumer Protection Law.

### E.    Sufficiency of Allegations Regarding Actual Damages

As an alternate basis for dismissal, Defendant argues with respect to Plaintiffs' claim of fraud that "the Court must dismiss [the claim] because Plaintiffs have not, and cannot, allege actual damages."  (Doc. No. 15, at 21.)  "To the contrary," Defendant explains, "the Amended Complaint acknowledges that Plaintiffs owed, and paid in full in accordance with their legal obligation, the debt sought by the debt collector."  (Id. (citing Am. Compl. ¶¶ 17, 56).)  Plaintiffs reply that

> [i]t is rather arrogant of Defendant to imply that, if the allegations are true, Defendant performed a service by fraudulently negotiating a 50% reduction of the debt.  That deal was rescinded after it became known by Paragonway [4] [sic] that Plaintiff did not negotiate the debt.  Plaintiffs were unable to avail themselves of the opportunity to negotiate or settle the debt with Paragonway [sic].

(Doc. No. 16, at 21.)  Notably, neither party offers any authority—state or federal, common law or statutory—in support of these divergent positions.

As the Third Circuit Court of Appeals has stated, "it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."  Commonwealth of Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc., 836 F.2d 173 (3d Cir. 1988) (quoting Car

---

[4] Plaintiffs refer to the debt collection agency as "Paragon Way" in their amended complaint.  (See, e.g., Am. Compl. ¶¶ 51, 52, 54–57.)

Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1107 (7th Cir. 1984)).  Consistent with that

admonition, the Court will disregard Plaintiffs' allegation, raised for the first time in their brief,

that the "deal was rescinded," (id.) and consider only those facts alleged in the amended

complaint, namely, that Plaintiffs were obliged to repay the full amount of the debt

(Am. Compl. ¶ 56) and that, due to the Branch Manager's meddling, Plaintiffs were "unable to

resolve or settle the debt through means other than full repayment, despite Paragon Way's

previous willingness to negotiate with Plaintiffs," (id. ¶ 57).

To prevail on a claim of fraud under Pennsylvania law, a plaintiff must prove by clear

and convincing evidence the existence of: (1) a misrepresentation; (2) a fraudulent utterance

thereof; (3) an intention by the maker that the recipient will thereby be induced to act; (4)

justifiable reliance by the recipient upon the misrepresentation; and (5) damage to the recipient

proximately caused.  Trans Penn Wax Corp. v. McCandless, 50 F.3d 217, 231–232 (3d Cir.

1995) (citing Seven v. Kelshaw, 611 A.2d 1232, 1236 (Pa. Super. Ct. 1992)).  Difficult as it may

be to foresee precisely how Plaintiffs intend to show "justifiable reliance upon the

misrepresentation" when Paragon Way, and not Plaintiffs, was the alleged recipient thereof,

Defendant disputes only the existence of damages, not their inducement.[5]  See Alberton v.

Commonwealth Land Title Ins. Co., 247 F.R.D. 469, 481 (E.D. Pa. 2008) ("A plaintiff alleging

fraudulent misrepresentation must . . . show justifiable reliance on the misrepresentation . . . .")

(citing Gibbs v. Ernst, 647 A.2d 882, 889 (Pa. 1994)).

---

[5] Plaintiffs broadly allege that "Defendant attempted to mislead both Paragon Way and
Plaintiffs as to the repayment of a debt between Paragon Way and Plaintiff Cary Sites."
(Am. Compl. ¶ 54.)

"Damages" is "a word of art meaning something paid in recompense for infringement of plaintiff's legal right by defendant's liability-creating conduct." Hodges v. Rodriguez, 645 A.2d 1340, 1348 n.13 (Pa. Super. Ct. 1994) (citing Miller v. Weller, 288 F.2d 438, 439 (3d Cir. 1961)).  Monetary damages fall into three basic categories: compensatory, or actual, damages, which include pecuniary losses, as well as compensation for physical and mental suffering; nominal damages, which are a "trivial amount awarded for the infraction of a legal right, where the extent of the loss is not shown, or where the right is one not dependent upon loss or damage"; and punitive damages, which are awarded to punish or deter especially egregious conduct. Nappe v. Anschelewitz, Barr, Ansell & Bonello, 477 A.2d 1224, 1230 (N.J. 1984). Under Pennsylvania law, "recovery will not be precluded simply because there is some uncertainty as to the precise amount of damages incurred." Pugh v. Holmes, 405 A.2d 897, 909–910 (Pa. 1979).  Likewise, it is well established that the "failure to prove damages [is] not determinative of the substantive issue of [a defendant's] alleged liability for fraud . . . ." Sands v. Forrest, 434 A.2d 122, 124 (Pa. Super. Ct. 1981) (holding that trial court "erred when it entered a directed verdict for appellees because of appellants' failure to prove damages"). See also Rhoads v. Heberling, 451 A.2d 1378, 1380 (1982) (holding that " the trial court did not err when it instructed the jury that it could award punitive damages to the plaintiffs . . . , even if no compensatory damages were awarded").

Here, Plaintiffs allege that Defendant's fraudulent conduct denied them an opportunity, previously available, to settle their debt with Paragon Way for anything less than its full amount. Just as there can be no damages where a plaintiff's position is no worse than it would have been absent the alleged fraud, some measure of damages, no matter how indeterminate, most certainly

lie where a plaintiff's position was made the worse.  Therefore, accepting the allegations in the

amended complaint as true, Plaintiffs suffered damages as a result of Defendant's alleged fraud.

Such damages may be nominal, but they are damages nonetheless, and, as a matter of law,

Plaintiffs are entitled to proceed with their claim.  See Peerless Wall & Window Coverings, Inc.

v. Synchronics, Inc., 85 F. Supp.2d 519, 536 (W.D. Pa. 2000) (declining to dismiss plaintiff's

claim of fraud for lack of actual damages because, "[u]nder Pennsylvania authority, nominal

damages are available as a remedy for fraud").

## III.     CONCLUSION

For the foregoing reasons, the Court will grant Defendant's motion to dismiss with

respect to Plaintiffs' claim under Pennsylvania's Unfair Trade Practices and Consumer

Protection Law and deny Defendant's motion with respect to Plaintiffs' claims of defamation,

intentional interference with prospective contractual relations, and fraud.  An appropriate order

follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CORY SITES and** | **:** | |
| **CARRIE SITES,** | **:** | |
| **Plaintiffs** | **:** | **Civil Action No. 1:07-cv-00469** |
| | **:** | |
| **v.** | **:** | **(Chief Judge Kane)** |
| | **:** | |
| **NATIONSTAR MORTGAGE LLC,** | **:** | |
| **Defendant** | **:** | |

## ORDER

**AND NOW**, on this 16th day of January, 2008, upon due consideration of Defendant's

motion to dismiss (Doc. No. 14) Plaintiffs' amended complaint (Doc. No. 12), and for the

reasons set forth in the accompanying memorandum, **IT IS HEREBY ORDERED THAT**:

1.  Defendant's motion to dismiss (Doc. No. 14) Plaintiffs' amended complaint (Doc. No. 12) is **GRANTED** with respect to Plaintiffs' claim under Pennsylvania's Unfair Trade Practices and Consumer Protection Law.

2.  Defendant's motion to dismiss (Doc. No. 14) Plaintiffs' amended complaint (Doc. No. 12) is **DENIED** with respect to Plaintiffs' claims of defamation, intentional interference with prospective contractual relations, and fraud.

3.  Defendant's motion to dismiss (Doc. No. 7) Plaintiffs' original complaint (Doc. No. 1) is **DENIED** as moot.

s/ Yvette Kane
Yvette Kane, Chief Judge
United States District Court
Middle District of Pennsylvania